UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Timothy Wiley,

      Plaintiff,

      v.                                    Civil Action No. 2:20–cv–154-wks-jmc

James Baker, CoreCivic,
Dennis J. Hawkins, Sr.,
and D. Jenkins,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 10)

Plaintiff Timothy Wiley, a Muslim inmate in the custody of the Vermont Department of Corrections (DOC), proceeding *pro se*, brings this civil action alleging that Defendants violated his constitutional rights by failing to timely deliver meals during Ramadan. (Doc. 6 at 1–2.) Specifically, he claims that on several occasions between April 25, 2020 and May 20, 2020, he did not timely receive, or receive at all, the "Suhur" breakfast meal while housed at the Tallahatchie County Correctional Facility (TCCF) in Tutwiler, Mississippi. (*Id.* at 3–4.) Wiley names as Defendants James Baker, interim Commissioner of the DOC, CoreCivic, Dennis J. Hawkins, Sr., the chaplain at TCCF, and D. Jenkins, the kitchen supervisor at TCCF. (*Id.* at 1.) Wiley seeks monetary relief. (*Id.* at 2.)

Presently before the Court is D. Jenkins's unopposed Motion to Dismiss Wiley's claims against him. (Doc. 10.) For the reasons set forth below, I recommend that Jenkins's Motion to Dismiss (Doc. 10) be GRANTED.

## Background

By Complaint dated June 18, 2020, Wiley originally commenced this action in Vermont state court on July 13, 2020.[1] (Doc. 6 at 6.) In his Complaint, Wiley alleges that the period of Ramadan, a holiday in the Muslim religion, began on April 24, 2020. (*Id.* at 1.) A few days prior, on April 22, 2020, Defendant Hawkins, who served as chaplain at TCCF, issued a memorandum stating that the breakfast meal was to be served beginning at 4:00 a.m., "no later than 4:15 a.m." (Doc. 6-1 at 6; Doc. 6 at 3.) Notwithstanding this guidance, Wiley alleges that on April 25, 2020, he did not receive a breakfast meal and that on April 26, April 28, May 15, May 19, and May 20, he received the breakfast meals too late and therefore was not able to eat. (*Id.* at 1–2, 3–4.) Wiley further asserts that on May 20, 2020, Defendants did not have enough food for all of the Muslim inmates to partake in the dinner meal. (*Id.* at 2, 3–4.)

---

[1] The "prison mailbox rule" typically requires the Court to consider the date on which Wiley presented his motion to prison staff for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Nobel v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). When it is not clear from the docket when prison staff received the motion, courts in the Second Circuit generally assume that the inmate gave the filing to officials on the date it was signed. *See United States v. Aguiar*, Crim. Action No. 2:00-cr-119, 2017 WL 3278887, at *3 (D. Vt. Aug. 2, 2017). However, because the ambiguity in this case permits the reasonable inference that Wiley may have exhausted his administrative remedies in the interim, I make no determination at this time as to when Wiley's Complaint should be deemed filed.

Wiley requests monetary damages in the amount of $20,000,000 for his "pain and suffering, [and] for being force[d] to starve during the above[-]mentioned dates." (*Id.* at 2.) He claims that Defendants' actions violate his rights under the Free Exercise Clause of the First Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and the Religious Freedom Restoration Act (RFRA). (*Id.* at 3.) Accordingly, on September 29, 2020, Defendants removed this action to this Court on the basis of federal-question jurisdiction. (Doc. 1 at 2, ¶ 4.)

On October 16, 2020, Defendant D. Jenkins filed the instant Motion to Dismiss. (Doc. 10.) He argues that this Court lacks personal jurisdiction over him as an out-of-state defendant because he does not have sufficient minimum contacts with the State of Vermont. (*Id.* at 2–6.) He further argues that Wiley's Complaint fails to set forth sufficient facts to state any claim against Jenkins. (*Id.* at 7–8.) Finally, Jenkins contends that Wiley's Complaint demonstrates that he failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, prior to filing suit. (*Id.* at 8–10.)

<u>Analysis</u>

### I. Personal Jurisdiction

Jenkins first argues Wiley's claims against him should be dismissed for lack of personal jurisdiction under Fed R. Civ. P. 12(b)(2). (Doc. 10 at 2–6.) "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life*

3

*Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Until an evidentiary hearing is held, . . . the plaintiff need make only a prima facie showing that jurisdiction exists . . . ." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

On a motion under Rule 12(b)(2), the court may consider evidence outside the Complaint. *See Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019). However, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). Nevertheless, the court will not draw "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). Accordingly, "[c]onclusory non-fact-specific jurisdictional allegations or legal conclusion[s] couched as . . . factual allegation[s] will not establish a prima facie showing of jurisdiction." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (second alteration in original) (internal quotation marks omitted).

In order for the Court to exercise personal jurisdiction, three requirements must be satisfied: (1) "the plaintiff's service of process upon the defendant must

have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *See Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 197 (S.D.N.Y. 2018) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)). In general, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).

Under Vermont's long-arm statute, 12 V.S.A. § 913(b), a court may exercise personal jurisdiction over a nonresident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the minimum contacts test and the reasonableness inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotation marks omitted); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990).

To determine whether exercising personal jurisdiction comports with due process, the Court must first "ask whether the defendant has sufficient minimum

contacts with the forum to justify the court's exercise of personal jurisdiction." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). "The constitutional minimum contacts inquiry for personal jurisdiction requires [the court] to distinguish between two forms of jurisdiction": specific and general. *Id.*

A court asserting "general jurisdiction" over a defendant is permitted to "hear any and all claims against" that defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction is authorized where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Id.* For an individual, the "paradigm forum" is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in an "exceptional case" will an individual's contacts with a forum be so extensive as to support general jurisdiction "notwithstanding domicile elsewhere, but the Second Circuit has yet to find such a case." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (citation omitted).

In this case, there is no basis for asserting general jurisdiction over Jenkins. The caption of Wiley's Complaint appears to indicate that Jenkins is the kitchen supervisor at TCCF in Mississippi (*see* Doc. 6 at 1), but there is no suggestion that Jenkins is domiciled or is otherwise "at home" in Vermont, as required for general jurisdiction. Indeed, the Complaint is devoid of allegations that Jenkins has ever had any contact with the State of Vermont, and in his Motion to Dismiss, Jenkins asserts he has had none. (Doc. 10 at 6.) Accordingly, the Court cannot exercise general jurisdiction over him.

By contrast, specific jurisdiction over a nonresident defendant exists "when the cause of action sued upon arises out of the defendant's activities in a state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). For specific jurisdiction, the minimum-contacts inquiry is satisfied if (1) the defendant purposefully availed itself of the privilege of conducting activities within the forum state or purposefully directed its activities at residents of the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). To meet the minimum-contacts requirement, "the defendant's suit-related conduct must create a substantial connection with the forum [s]tate," not simply with persons who reside there. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see id.* at 283–84 ("The inquiry . . . focuses on the relationship among the defendant, the forum, and the litigation." (internal quotation marks omitted)). As such, "mere injury to a forum resident" is insufficient. *Id.* at 278. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017).

Here, Wiley's Complaint centers around the 2020 Ramadan meal service at TCCF in Mississippi. (Doc. 6 at 3–4; Doc. 6-1 at 6.) Although the Complaint contains no allegations concerning Jenkins's involvement in the purported constitutional violations, Wiley's identification of Jenkins as the kitchen supervisor at TCCF suggests that Wiley believes Jenkins had some connection to the Ramadan

7

meal service he complains of. His allegations, however, indicate that all suit-related conduct occurred at TCCF in Mississippi. Accordingly, Wiley has not shown that his claims arise out of Jenkins's conduct in Vermont, as required for the Court to exercise specific jurisdiction. In fact, Wiley offers no allegations establishing that Jenkins has ever had any purposeful contact with Vermont. And in his Motion to Dismiss, Jenkins asserts that he has had no contact with the State of Vermont, let alone minimum, suit-related contacts. (Doc. 10 at 6.) Moreover, the fact that Wiley, as a Vermont DOC inmate being housed at TCCF,[2] may have been a Vermont resident at the time of the alleged constitutional violations is insufficient to confer specific jurisdiction over Jenkins. *See Walden*, 571 U.S. at 290. Because Wiley has failed to carry his burden to show that Jenkins has the requisite minimum contacts with Vermont, "the [personal jurisdiction] inquiry ends" and there is no need for the Court to evaluate the reasonableness prong of the due process analysis. *Metro. Life Ins. Co.*, 84 F.3d at 568 (internal quotation marks omitted). I therefore recommend Jenkins's Motion to Dismiss (Doc. 10) for lack of personal jurisdiction be GRANTED.

---

[2] To the extent Wiley relies on the contract he implies exists between the DOC and TCCF to house Vermont inmates (*see* Doc. 6-1 at 1) to establish personal jurisdiction over Jenkins as a TCCF employee, such a contract does not suffice to subject Jenkins to jurisdiction in this Court. *See Dumont v. Corr. Corp. of Am.*, No. 2:14–cv–209, 2015 WL 3791407, at *5 (D. Vt. June 17, 2015) (finding that contract between Vermont DOC and out-of-state prison corporation to house Vermont prisoners in Arizona did not subject Arizona prison employees to personal jurisdiction in Vermont) (collecting cases).

## II.  Failure to State a Claim

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678.  Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual

9

enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558. Because Wiley is representing himself, in addition to accepting his factual allegations as true, the Court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam). Nevertheless, the Court "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Wiley asserts claims under the Free Exercise Clause of the First Amendment, RLUIPA, and RFRA. (Doc. 6 at 3.) To state a First Amendment free exercise claim, an inmate is required to make a threshold showing that the defendant's "disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006).[3] If the inmate asserts sufficient facts to state a plausible claim, the burden then shifts to the defendant prison officials to "identify[] the legitimate penological interests that justif[ied] [their] conduct." *Id.* at 275. Similarly, to state a claim under RLUIPA, a plaintiff must "demonstrate that the state has imposed a substantial burden on the exercise of his [or her] religion."

---

[3] The Second Circuit has recently opined that it is unclear whether the threshold showing of a substantial burden is still required in order to state a First Amendment free exercise claim. *See Brandon v. Kinter*, 938 F.3d 21, 32 n.7 (2d Cir. 2019) ("Our Circuit has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision in *Employment Division v. Smith* . . . ."); *Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003) (assuming without deciding that substantial burden requirement applies). Because the issue has not yet been squarely addressed by the Second Circuit, this Court should continue to apply the substantial burden test. *See Richard v. Strom*, CASE NO. 3:18-cv-1451 (CSH), 2018 WL 6050898, at *3 n.1 (D. Conn. Nov. 19, 2018) (noting the "Second Circuit['s] uncertainty," but observing that "absent instruction to the contrary, Second Circuit courts have continued to assume the validity of the substantial burden test when addressing free exercise claims").

10

*Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010). If the plaintiff makes that showing, the burden shifts to the state to demonstrate "that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Id.* Likewise, to state a claim under RFRA, "a plaintiff must allege that there is a substantial burden on the exercise of [his] sincere religious beliefs." *Grief v. Quay*, 701 F. App'x 64, 64 (2d Cir. 2017) (mem.).

Wiley alleges that on several occasions during Ramadan, his "Suhur" breakfast meals were not timely delivered or delivered at all, and he was therefore "force[d] to starve" on those dates. (Doc. 6 at 3.) However, he does not allege any facts concerning Jenkins's involvement or participation in the delivery of those meals. In fact, Jenkins's name does not appear in the body of the Complaint.[4] Without any such allegations, the Court cannot reasonably infer that Jenkins "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although Wiley's naming of Jenkins in the caption as the kitchen supervisor suggests that Wiley believes Jenkins had some connection to the Ramadan meal service, the Court is not permitted to "invent factual allegations that [Wiley] has not pled." *Chavis*, 618 F.3d

---

[4] To the extent Wiley intends to bring claims pursuant to 42 U.S.C. § 1983, any such claims against Jenkins should also be dismissed. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). However, "personal involvement is not established where the defendant's name appears only in the caption of the complaint." *Moore v. Westchester Cnty.*, No. 18-CV-7782 (KMK), 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019). Likewise, nonspecific allegations "that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Leneau v. Ponte*, 1:16-cv-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan 25, 2018) (internal quotation marks omitted). Here, Wiley names Jenkins only in the caption of the Complaint and relies on "group pleading" to establish liability. (*See* Doc. 6 at 1 ("I am suing the people/company listed above as defendant(s) because they did the following . . .").) Any potential § 1983 claim against Jenkins based on Wiley's Complaint therefore fails.

at 170.  Accordingly, Wiley has not plausibly alleged that Jenkins "has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Moreover, RLUIPA "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014).  Thus, a plaintiff may only obtain injunctive or declaratory relief as a remedy for a RLUIPA violation.  Wiley does not seek injunctive or declaratory relief in this case.  He seeks only monetary damages in the amount of $20,000,000.  (Doc. 6 at 2.)  Thus, his claims against Jenkins for violations of RLUIPA should be dismissed.

Finally, although RFRA was initially enacted to apply to federal as well as state governments and their subdivisions, *see* 42 U.S.C. § 2000bb-2, it has since been struck down as it applied against states by the United States Supreme Court, which held that the law exceeded Congress' constitutionally granted legislative powers.  *See City of Boerne v. Flores*, 521 U.S. 507, 516 (1997).  As a result, no claim can arise against state governments or state officials under RFRA.  Because the Complaint contains no allegations suggesting Jenkins is a federal official, Wiley's RFRA claims against him should therefore be dismissed.

For these reasons, Wiley has failed to state a claim against Jenkins. Accordingly, even if this Court could assert personal jurisdiction over Jenkins, I would nevertheless recommend his Motion to Dismiss be GRANTED pursuant to Rule 12(b)(6).

**III.     Exhaustion Under the PLRA**

Lastly, Jenkins seeks to dismiss Wiley's Complaint for failure to exhaust his administrative remedies under the PLRA. (Doc. 10 at 8–10.) Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

Importantly, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even when some of the relief sought is not available under the grievance process. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (holding that the PLRA requires exhaustion "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"); *Weller v. Dykeman*, Civil Action No. 5:10–CV–181, 2012 WL 5409663, at *5 (D. Vt. Oct. 10, 2012) ("[P]risoners must utilize state grievance procedures even where the relief sought, such as money damages, is not offered through those procedures.").

Exhaustion under the PLRA is "not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). Because it is an affirmative defense, the burden lies with the defendant "to demonstrate nonexhaustion"; it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015); *see also Jones*, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."). Accordingly, the Court should only grant a motion to dismiss on failure to exhaust grounds where "nonexhaustion is evident on the face of the plaintiff's complaint." *Preterotti v. Souliere*, Civil Action No. 2:16–cv–72–wks–jmc, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016).

The Vermont DOC's grievance process requires that an inmate first file an informal complaint (Grievance Form #1), then a formal grievance (Grievance Form #2), followed by an appeal to the appropriate Corrections Executive (Grievance Form #5), and finally an appeal to the Commissioner (Grievance Form #7).[5] "The Commissioner's office will respond to all appeals within twenty (20) business days of receiving the appeal." Offender Grievance System #320.01 at 15, ¶ 15(b)(i). The grievance process "is completed upon return of a Commissioner's decision." *Smith v. Touchette*, Case No. 5:20-cv-6, 2020 WL 6779009, at *5 (D. Vt. Nov. 18, 2020) (internal quotation marks omitted). When the inmate follows the entire procedure,

---

[5] The Court takes judicial notice of the DOC's grievance procedures, available at https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/320.01-Offender-Grievance-System-for-Field-and-Facilities.pdf. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations).

but the Commissioner fails to respond within the deadline provided by the grievance procedure, the inmate is nevertheless considered to have exhausted his administrative remedies. *See Hayes v. Dahlke*, 976 F.3d 259, 268–72 (2d Cir. 2020).

Here, where the Court is required to draw all reasonable inferences in Wiley's favor and to read his Complaint liberally and construe it to raise the strongest possible arguments it suggests, I cannot find that Jenkins has demonstrated Wiley's nonexhaustion of administrative remedies. Although Wiley's Complaint is dated June 18, 2020, it was not filed with the state court until July 13, 2020. (Doc. 6 at 6; Doc. 1 at 1, ¶ 1.) Wiley filed Grievance #7 to the Commissioner on June 15, 2020 (Doc. 6-1 at 5), and the Offender Grievance System required a response within 20 business days. Given that timeline, and the passage of time between the apparent dating and filing of Wiley's Complaint, it is possible that Wiley properly exhausted his administrative remedies even if the Commissioner failed to respond. *See Smith*, 2020 WL 6779009, at *6 (conducting similar analysis); *see Hayes*, 976 F.3d at 270 (reversing grant of summary judgment to prison officials where inmate had followed the administrative procedure but the appellate body had failed to respond within the time allowed). Nonexhaustion is therefore not "evident" on the face of Wiley's Complaint. *Preterotti*, 2016 WL 7971319, at *3.

Accordingly, Jenkins has failed to carry his burden to demonstrate that Wiley failed to exhaust his administrative remedies and the Court should not grant the Motion to Dismiss on that additional basis. However, for the reasons described

above, I recommend that the Court dismiss the Complaint's claims against Jenkins for lack of personal jurisdiction and for failure to state a claim.

## IV. Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Here, it is not clear that Wiley can state a viable federal claim against Jenkins, "but [the Second] Circuit's precedent encourages giving [him] another opportunity." *Montpelier v. Green Mountain Care*, Case No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11, 2019). Accordingly, I recommend that the Court grant Wiley leave to amend his Complaint.

Wiley is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Wiley's factual allegations in their entirety and must set forth all the claims Wiley has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. In the event Wiley elects not to file an Amended Complaint within 30 days of the

Court's order with respect to this Report and Recommendation, I recommend dismissal of all claims against Jenkins for the reasons set forth in this Report and Recommendation.

## Conclusion

For these reasons, I recommend that Jenkins's Motion to Dismiss (Doc. 10) be GRANTED with a grant of leave to amend the complaint within 30 days of the Court's order with respect to this Report and Recommendation.

Dated at Burlington, in the District of Vermont, this 28th day of January 2021.

/s/ John M. Conroy            .
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).