UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Timothy Wiley, | |
| Plaintiff, | |
| v. | Civil Action No. 2:20–cv–154 |
| James Baker and CoreCivic, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**
(Docs. 21, 23)

Plaintiff Timothy Wiley, a prisoner proceeding *pro se*, brings this action under 42 U.S.C.

§ 1983 against Defendants James Baker, former interim Commissioner of the Vermont

Department of Corrections (DOC),[1] and CoreCivic, a private company contracted to manage

correctional facilities throughout the United States, including the Tallahatchie County

Correctional Facility (TCCF) in Tutwiler, Mississippi.  Wiley, a Muslim inmate in the custody of

the Vermont DOC and housed at TCCF during the relevant period, alleges in his Amended

Complaint that Defendants failed to timely deliver meals on seven occasions during Ramadan

2020, violating his rights under the Religious Land Use and Institutionalized Persons Act

(RLUIPA) and the First, Eighth, and Fourteenth Amendments to the United States Constitution.

(Doc. 16 at 1–3.)  Wiley seeks monetary relief for the "pain and suffering" he experienced due to

Defendants causing him "to starve beyond what's expected during Ramadan."  (*Id.* at 4.)

---

[1] Since the filing of Wiley's Amended Complaint, Nicholas Deml has succeeded James Baker as DOC Commissioner.  To the extent that Wiley's Amended Complaint names former interim Commissioner Baker in his official capacity, Commissioner Deml is automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d).

Pending before the Court is CoreCivic's Motion to Dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Doc. 21.)  Defendant Baker joins CoreCivic's Motion to Dismiss.  (Doc. 23.)  For the reasons explained below, I recommend granting the Motion and dismissing Wiley's Amended Complaint.

## Procedural and Factual Background

Wiley originally filed this action in Vermont Superior Court on June 18, 2020.  (Doc. 6 at 1–6.)  The Complaint listed as Defendants Baker, CoreCivic, TCCF Chaplain Dennis Hawkins, Sr., and D. Jenkins, the kitchen supervisor at TCCF.  (*Id.* at 1.)  Wiley alleged the following facts in his Complaint.  In the year 2020, the period of Ramadan—a holy month of fasting, worship, and prayer for Muslims—began on April 24.  (*Id.*)  On April 22, 2020, Hawkins issued a Memorandum to TCCF inmates stating that the breakfast meal for those observing Ramadan was to be served beginning at 4:00 a.m. and "no later than 4:15 a.m." (*Id.* at 3; Doc. 6-1 at 6.)  On April 25, 2020, Wiley did not receive a breakfast meal; and on April 26, April 28, May 15, May 19, and May 20, 2020, he received the breakfast meals late and therefore was unable to eat in accordance with the requirements of Ramadan.  (Doc. 6 at 3.)  On May 14, 2020, "no bags" were provided; and on May 20, 2020, there was not "enough food for everyone" at the dinner meal.  (*Id.*)  Claiming violation of his rights under RLUIPA and the Religious Freedom Restoration Act (RFRA) (*id.* at 3–4), Wiley requested "$20,000,00[0]" in damages for his "pain and suffering" and for "being force[d] to starve" on the above dates (*id.* at 2).

On September 29, 2020, Defendants removed the action to this Court on the basis of federal-question jurisdiction.  (Doc. 1 at 2, ¶ 4.)  Jenkins filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a claim.  (Doc. 10.)  On January 28, 2021, Magistrate Judge Conroy issued a Report and Recommendation finding in Jenkins's favor on the following

grounds: (1) the Court could not exercise either general or personal jurisdiction over Jenkins; (2) the Complaint did not plausibly allege any facts showing Jenkins's involvement or participation in the delivery of the relevant Ramadan meals; (3) the RLUIPA claim for monetary damages failed because RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities; and (4) the Complaint did not allege that Jenkins was a federal officer and no claim can arise against state governments or state officials under RFRA. (Doc. 11.) The Report and Recommendation was adopted on June 28, 2021, and Wiley was granted thirty days to file an amended complaint. (Doc. 15.)

On July 12, 2021, Wiley filed an Amended Complaint naming only Baker and CoreCivic as Defendants. The Amended Complaint again alleged that on seven occasions between April 25, 2020 and May 20, 2020, Defendants failed to provide meals to him in accordance with the requirements of the Muslim religion during Ramadan. (Doc. 16.) Specifically, Wiley alleges the following violations: (a) on April 25, 2020, he did not receive the "Suhur"[2] breakfast meal (*id.* at 2); (b) on April 26 and 28, 2020, and May 15, 19, and 20, 2020, his breakfast meal was served late; and (c) on May 14, 2020, "no bags" were provided (*id.* at 3).[3] The Amended Complaint references (*id.* at 3) and attaches (Doc. 16-1) the same April 22, 2020 Memorandum from TCCF

---

[2] "Suhur," also known as Sehri, Sahur, or Sahari, is a meal consumed before sunrise by Muslims during the holy month of Ramadan. It is the last meal eaten before fasting from dawn to sunset during Ramadan. *See* https://www.collinsdictionary.com/us/dictionary/english/suhur (last visited 3/31/22); https://en.wikipedia.org/wiki/Suhur (last visited 3/31/22); https://en.islamway.net/article/12571/suhur-pre-dawn-meal (last visited 3/31/22).

[3] Wiley does not include the alleged May 14 and 15 violations in the section of his Amended Complaint that lists the allegedly unconstitutional conduct. (*See* Doc. 16 at 1–2.) He does mention these alleged violations later in the Amended Complaint, apparently claiming that the violations were contained in grievances submitted to Defendants. (*Id.* at 3.) Given that the Court must read a *pro se* complaint liberally, the Court considers all of the allegations contained in the Amended Complaint, for a total of seven alleged violations. However, the Court may not consider Wiley's allegation that the facility did not provide enough food at the dinner meal on May 20, 2020 "for all the participating Muslim[s]" (*id.* at 2), as Wiley lacks standing to challenge Defendants' alleged failure to properly deliver religious meals to other inmates. *See Duemmel v. Fischer*, 368 F. App'x 180, 182 (2d Cir. 2010); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008).

Chaplain Hawkins that was attached to the original Complaint.  The Memorandum provides that "[s]unrise meals will begin at 4:00 a.m. no later than 4:15 a.m." during Ramadan.  (*Id.* at 3.)  Wiley again seeks "$20,000,00[0]" for  pain and suffering and for being "force[d] to starve beyond what's expected during Ramadan."  (Doc. 16 at 4.)

On November 24, 2021, Defendant CoreCivic filed a Motion to Dismiss the Amended Complaint (Doc. 21), which Defendant Baker joined on March 22, 2022 (Doc. 23).  Defendants make two principal arguments.  First, they argue that the Amended Complaint "fails to allege that [Wiley] was unable to *eat* the allegedly late Suhur by sunrise, and instead is focused on a criticism of the start time for *service* of the sunrise meals."  (Doc. 21 at 5 (emphases added).)  As those meals were served before sunrise, Defendants contend that Wiley was able to eat them before sunrise and therefore he was able to abide by Ramadan's daytime fasting requirements.  (*Id.*)  Second, Defendants argue that, even assuming (a) the breakfast meals were served to Wiley after sunrise, (b) the April 25 breakfast meal was never served, and (c) the May 20 dinner did not contain enough food, the Amended Complaint fails to allege a "substantial burden" on Wiley's right to free exercise of his religion.  (*Id.* at 6.)  The Motion is unopposed.

<u>Analysis</u>

## I.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. The court need not, however, credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Even after *Iqbal* and *Twombly*, the court must construe a *pro se* plaintiff's complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed.]" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, in assessing *pro se* complaints under Rule 12(b)(6), courts "apply[ ] a more flexible

standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 139–40 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *Triestman*, 470 F.3d at 477 ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).

## II.     42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a plaintiff may assert a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 816 (1985)).  Wiley brings suit under § 1983 for redress of the deprivation

of his right to free exercise of religion under RLUIPA and the First Amendment; his right to be

free from cruel and unusual punishment under the Eighth Amendment; and his right to "equal

treatment" under the Fourteenth Amendment.[4]  (Doc. 16 at 1–3.)

## III.    Defendants' Arguments for Dismissal of the Amended Complaint

### A.    Time of Serving Meals vs. Time of Eating Meals

Defendants argue that the Amended Complaint "fails to allege that [Wiley] was unable to

eat the allegedly late Suhur by sunrise, and instead is focused on a criticism of the start time for

service of the sunrise meals."  (Doc. 21 at 5.)  According to Defendants, the April 2020

Memorandum of TCCF Chaplain Hawkins[5] demonstrates that those meals were in fact served

---

[4]  This Report and Recommendation analyzes only Wiley's claims under RLUIPA and the First Amendment, given that the Amended Complaint lacks any allegations substantiating claims under the Eighth and Fourteenth Amendments.  To plead a claim under either the Eighth or Fourteenth Amendment, Wiley must allege that Defendants acted with "deliberate indifference," meaning with a *mens rea* greater than mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause [of the Eighth Amendment], a prison official must have a sufficiently culpable state of mind." (internal quotation marks omitted)); *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) ("The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's 'deliberate indifference' to any objectively serious condition of confinement.").  The Amended Complaint makes no allegation regarding Defendants' state of mind, let alone that Defendants acted with deliberate indifference, and thus the Amended Complaint plainly fails to state a claim under either the Eighth or Fourteenth Amendment.  *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (finding complaint failed to state a claim of deliberate indifference because there was "no allegation that [defendant] medical provider[s] acted with a culpable state of mind").  To the extent that Wiley may be alleging an equal protection claim under the Fourteenth Amendment, such a claim requires an allegation that "a particular group or class of individuals has been treated differently from others within the institution."  *Smith v. Perlman*, No. 9:11-CV-0020 (MAD/DRH), 2012 WL 929848, at *10 (N.D.N.Y. Mar. 19, 2012) (citing *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990), *cert. denied*, 498 U.S. 951 (1990).  To establish an equal protection claim, he must demonstrate the existence of a similarly situated group that has been treated differently from him.  Wiley has not alleged how he was treated differently from others similarly situated.

[5]  The Court may consider Chaplain Hawkins's Memorandum because Wiley has referenced it in, and attached it to, the Amended Complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (citations and internal quotation marks omitted)).  However, the Court may consider the Memorandum only for the purpose of documenting TCCF's policy regarding Ramadan meals during the relevant period, not to demonstrate that the policy was actually followed during that period.

before sunrise, allowing Wiley to eat them in accordance with the tenets of his religion.  (*Id.* (citing Doc. 16-1 at 3).)  Specifically, Defendants argue that, at TCCF during Ramadan 2020, "[b]reakfast was served at 4 a.m. to 4:15 a.m.," which was before sunrise, and therefore Muslim inmates were provided "time to have their meals before sunrise."  (*Id.*)

But the Amended Complaint does not claim that "breakfast was served at 4 a.m. to 4:15 a.m."  Although Wiley attaches to the Amended Complaint the April 2020 Memorandum indicating that there was a policy at TCCF to serve the breakfast meal to Muslim inmates during Ramadan "at 4:00 a.m. [and] no later than 4:15 a.m." (Doc. 16-1 at 3), the crux of Wiley's claim is that the breakfast meal was *not* served at that time (meaning the policy stated in the April 2020 Memorandum was not followed).  Rather, Wiley asserts that the breakfast meal was served late or not at all on the occasions listed in the Amended Complaint.  (*See* Doc. 16 at 1–2.)  The Amended Complaint alleges that on certain dates Wiley received the breakfast meal later than the timeframe specified in the Memorandum.  (*Id.* at 3.)  It alleges that the relevant meals "came too late," implying that the meals were served after sunrise/dawn, when Wiley was required to fast in observance of Ramadan.  (*Id.* at 2.)  Reading the Amended Complaint liberally as required, it adequately alleges a violation of Wiley's right to free exercise of his religion.  In sum, Wiley alleges that he was prevented from complying with the dictates of his Muslim faith in observing Ramadan because Defendants served the breakfast meal to Wiley late, i.e., at or after sunrise, or not at all, on multiple occasions during Ramadan 2020.

With respect to Defendants' contentions that (1) observance of Ramadan may not "require[] the consumption of [S]uhur" or "the consumption of [S]uhur at a particular time before sunrise," and (2) "a believer's devotion is demonstrated by fasting during the day" (Doc. 21 at 6), these claims are not appropriate for resolution on a Rule 12(b)(6) Motion to Dismiss.

*See Woodward v. Ali*, Civ. No. 9:13-CV-1304 (LEK/DJS), 2018 WL 4190139, at *7 (N.D.N.Y. Aug. 10, 2018) (holding that "it will be up to the trial jury, and not this Court, to determine if [p]laintiff's religious beliefs are sincerely held, and were substantially burdened"), *report and recommendation adopted*, 2018 WL 4188430 (N.D.N.Y. Aug. 31, 2018).  At this early stage in the case, the Court may consider only whether the allegations in the Amended Complaint, if true, state a claim for relief.  *See Wilson*, 671 F.3d at 128.  Moreover, although "[w]hether a particular practice is religiously mandated is surely relevant to resolving whether a particular burden is substantial[,] [n]either the Supreme Court nor [this Circuit] . . . ha[s] ever held that a burdened practice must be mandated in order to sustain a prisoner's free exercise claim." *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003) (citation omitted).  "To confine the protection of the First Amendment to only those religious practices that are mandatory would necessarily lead [the court] down the unnavigable road of attempting to resolve intra-faith disputes over religious law and doctrine." *Id.*  The Second Circuit has thus "decline[d] to adopt a definition of substantial burden that would require claimants to show that they either have been prevented from doing something their religion says they must, or compelled to do something their religion forbids." *Id.*

Accordingly, to the extent that Defendants argue the Amended Complaint fails to adequately allege that Wiley was unable to eat the relevant breakfast meals in accordance with the tenets of his religion, this argument is not persuasive.

### B.    Substantial Burden on Wiley's Religious Beliefs

Defendants also claim that the Amended Complaint fails to adequately allege that Defendants' conduct substantially burdened Wiley's religious beliefs.  According to Defendants, Wiley's allegation that he missed seven meals during the month-long period of Ramadan does not constitute a "substantial burden of [his] right to exercise his religion."  (Doc. 21 at 6.)

To state a First Amendment free exercise claim, an inmate is required to make a threshold showing that the prison officials' disputed conduct "substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006). "[A] substantial burden exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (second alteration in original) (internal quotation marks omitted). "While the substantial burden requirement presupposes that there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally *de minimis*, establishing a substantial burden is not a particularly onerous task." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (citations and internal quotation marks omitted).[6] If an inmate is able to establish that the prison officials' conduct substantially burdened the free exercise of his religion, the burden then shifts to the prison officials to "identify[] the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 275.

To state a claim under RLUIPA, a plaintiff similarly "must demonstrate that the state has imposed a substantial burden on the exercise of his religion." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010). If the plaintiff makes that showing, the burden shifts to the state to

---

[6] The Second Circuit has recognized that it is unsettled whether an inmate must establish that the conduct of prison officials resulted in a "substantial burden" on his religious beliefs in order to state a First Amendment free exercise claim. *See Washington v. McKoy*, 816 F. App'x 570, 573 (2d Cir. 2020) (noting that "this Court has not yet decided whether a prisoner asserting a free exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs"); *Brandon*, 938 F.3d at 32 n.7 ("Our Circuit has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 887 . . . (1990).")). Absent contrary authority, this Report and Recommendation follows other courts in this Circuit in assuming the continuing vitality of the substantial burden test when addressing Wiley's Free Exercise Clause claims. *See, e.g.*, *Davies v. Hickley*, No. 3:20-cv-00940 (VAB), 2021 WL 2400276, at *11 (D. Conn. June 11, 2021) ("Because the impact of the Supreme Court's decision in *Smith* has not yet been addressed by the Second Circuit, this Court will continue to apply the substantial burden test."); *Richard v. Strom*, CASE NO. 3:18-cv-1451 (CSH), 2018 WL 6050898, at *3 n.1 (D. Conn. Nov. 19, 2018) (noting the "Second Circuit['s] uncertainty," but observing that "Second Circuit courts have continued to assume the validity of the substantial burden test when addressing free exercise claims").

"demonstrate[e] that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Id.*

Wiley alleges that on five occasions during Ramadan, his "Suhur" breakfast meals were not timely delivered; on one occasion during that period, he received no breakfast meal; and on another occasion during that period, "no bags" were provided. (Doc. 16 at 1–2, 3.) As a result, Wiley claims he was "force[d] to starve" on those dates "beyond what's expected during Ramadan." (*Id.* at 4.)

Defendants argue that "[i]t is plaintiff's burden to show a substantial burden [in] violation of his [F]irst [A]mendment freedom of exercise right that is not *de minimis*," and that Wiley does not meet his burden by alleging that he missed meals, untimely received meals, or did not receive enough food for seven meals during Ramadan. (Doc. 21 at 6.) In other words, Defendants claim that the Amended Complaint should be dismissed because, even assuming that Defendants' deficient service of seven meals to Wiley during Ramadan 2020 adversely affected his ability to observe the fasting requirements of his Muslim faith, this could not have constituted a "substantial burden" on Wiley's First Amendment right to the free exercise of his religion.

Defendants' "substantial burden" argument is not persuasive for two reasons. First, although Defendants are correct that a plaintiff alleging a claim for violation of his First Amendment free exercise rights must ultimately show that the defendant's conduct "substantially burden[ed] his sincerely held religious beliefs," *Salahuddin*, 467 F.3d at 274–75, the plaintiff need not make that showing in his complaint or in response to a Rule 12(b)(6) motion to dismiss. Second, given that the case law is not clear on precisely how many missed or untimely meals during Ramadan would constitute a "substantial burden" to a Muslim inmate, dismissal on "substantial burden" grounds is inappropriate at this stage of the case.

      **1.**     **Dismissal under Rule 12(b)(6) is not warranted based on Defendants'
claim that the Amended Complaint does not allege a "substantial
burden" on Wiley's religious beliefs.**

In order to withstand a Rule 12(b)(6) motion, the plaintiff need only allege that the
defendant's conduct substantially burdened his religious beliefs. Wiley alleges that he "has been
Muslim since 1986"; he "has participate[d] in every Ramadan since . . . 2006"; and he was
"force[d] to starve" during Ramadan 2020 due to Defendants' service of meals to him in
violation of the tenets of the Muslim faith. (Doc. 16 at 2, 4.) The Amended Complaint thus
alleges that the actions of Defendants forced Wiley to choose between following his Muslim
beliefs or going without food. *See Kahane v. Carlson*, 527 F.2d 492, 496 (2d Cir. 1975) (noting
that prisons are required to provide "a diet sufficient to sustain the prisoner in good health
without violating [the prisoner's religion's] dietary laws"); *Lightner v. Wenderlich*, 271 F. Supp.
3d 445, 454 (W.D.N.Y. 2017) (holding that "[w]ith regard to an inmate's religious dietary
beliefs, all that is required for a prison diet not to burden an inmate's free exercise of religion is
the provision of a diet sufficient to sustain the prisoner in good health without violating his
religion's dietary laws" (alterations and internal quotation marks omitted)); *Thompson v. Holm*,
809 F.3d 376, 380 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose
between daily nutrition and religious practice is a substantial burden.").

Wiley's allegations are sufficient at this early stage to allege a constitutional claim for
violation of his right to exercise his religion freely.[7] *See, e.g.*, *Diggs v. DeBlasio*, No. 19-CV-
3311 (PKC) (LB), 2019 WL 3281014, at *3 (E.D.N.Y. July 18, 2019) (finding allegation that
inmate "was denied his suhoor meal three times is sufficient to state a claim at th[e motion-to-

---

      [7] Although Defendants cite authority to argue that Wiley's alleged deprivations amounted to only
*de minimis* violations of his free exercise rights, the cited cases do not address the "substantial burden" issue at the
motion-to-dismiss stage. (*See* Doc. 21 at 6.)

dismiss] stage"); *Gill v. Hoadley*, 261 F. Supp. 2d 113, 124 (N.D.N.Y. 2003) (recommending denial of motion to dismiss and explaining, "[w]hile once again it may ultimately be found, based upon a more fully developed record, that this claim is legally deficient, in that plaintiff's allegations fail to establish an infringement of constitutional proportions upon his free exercise rights, and that the denials were proper based upon legitimate penological concerns, it is premature at this juncture, giving plaintiff the benefit of all inferences, to find as a matter of law that plaintiff cannot establish any set of facts sufficient to support a free exercise claim"); *Ford v. McGinnis*, No. 00 Civ. 3437(SAS), 2000 WL 1808729, at *3 (S.D.N.Y. Dec. 11, 2000) (declining to grant motion to dismiss where prisoner alleged he was unconstitutionally denied meal he claimed was an integral part of celebration of Muslim holiday, because "[t]he balancing required by the First Amendment cannot be done without further development of the factual record"); *Jones v. Goord*, 190 F.R.D. 103, 109 (S.D.N.Y. 1999) (finding that "[i]n most cases" where prisoner alleges that prison authorities prevented him from engaging in conduct mandated by his faith, "the balancing required by the First Amendment cannot be accomplished without the benefit of an evidentiary record").

> **2.    The Court cannot determine at the motion-to-dismiss stage whether Defendants' alleged conduct substantially burdened Wiley's right to exercise his religion.**

The caselaw is not clear on precisely how many missed or untimely meals during Ramadan would constitute a "substantial burden" on a Muslim inmate's practice of his religion. The Second Circuit recently rejected a claim that deficient service of ten meals to a Muslim prisoner (only three more than Wiley alleges here) does not constitute a substantial burden. *Brandon*, 938 F.3d at 36.  "In the context of religious feasts and fasting, our Circuit has . . . held that a small number of noncompliant meals—even a single violation—can be a substantial

burden." *Id.* at 35.  As the Second Circuit explained in *Brandon v. Kinter*, "it would be absurd to require that courts, in order to determine what constitutes a substantial burden, be made to decide the number of violations of a particular religious tenet that make a sin grievous." *Id.* at 36.

*Brandon* helpfully reviewed Second Circuit precedent in which a small number of non-compliant meals was found to pose a substantial burden on a prisoner's religious beliefs.  In *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004), the Second Circuit held that "a 7-day restrictive diet was a substantial burden when it was imposed during Ramadan and therefore interfered with the prisoner's breaking of the fast." *Brandon*, 938 F.3d at 35.  Similarly, in *Williams v. Does*, 639 F. App'x 55, 56–57 (2d Cir. 2016), the court vacated a district court's order finding that premature delivery (by forty-five minutes or less) of five of a prisoner's Ramadan sunset meals was only a *de minimis* violation of the First Amendment.[8] *See Williams v. Rock*, No. 9:13-CV-0582 (GTS/DEP), 2014 WL 4685035, at *1 (N.D.N.Y. Sept. 19, 2014), *aff'd in part, vacated in part, remanded sub nom. Williams v. Does*, 639 F. App'x 55 (2d Cir. 2016).  *Williams* explained that "[t]he district court relied on non-binding case law when it determined that [the prisoner's] burden was *de minimis* because only a few of his meals were delivered prematurely[ and] its reasoning is inconsistent with this Court's case law, which cautions against 'the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent . . . .'" 639 F. App'x at 57 (quoting *Ford*, 352 F.3d at 593).  Finally, in *Holland v. Goord*, 758 F.3d 215, 221–22 (2d Cir. 2014), the Second Circuit held that "the defendants substantially burdened the plaintiff's religious beliefs by ordering him to drink water during Ramadan in order to provide a urine sample for drug testing."  The drinking of water violated the plaintiff's fast, which *Holland* noted was a grave sin according to

---

[8]  In reinstating the Muslim inmate's claim, the Second Circuit noted the complaint's allegation that "the premature sunset meals forced [the plaintiff] to either forego his meal or break his fast." *Id.* at 57.

the plaintiff's religious beliefs.  *Brandon*, 938 F.3d at 35.  *Holland* further explained that "the district court's conclusion that the order to provide a urine sample placed only a *de minimis* burden on [plaintiff's] free exercise because he could make up a premature drink of water with one extra day of fasting, finds no support in our case law."  *Holland*, 758 F.3d at 222 (citation and internal quotation marks omitted).

In all of these cases, "the relatively small number of violative incidents did not prevent [the court] from finding that the prisoner's religious beliefs were substantially burdened."  *Brandon*, 938 F.3d at 35; *see Skates v. Shusda*, Civil Action No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at *4 (N.D.N.Y. May 31, 2016) (relying on *Williams* and finding that "plaintiff's allegation that the denial of a single religious meal, which allegedly did not allow plaintiff to enjoy the full effect of [a] holy day and caused him to dwell in sin, plausibly alleges that his First Amendment rights were substantially burdened" (citation and internal quotation marks omitted)), *report and recommendation adopted*, 2016 WL 3824342 (July 13, 2016).

Nevertheless, the Second Circuit has acknowledged that "a single meal or a smaller number of meals spread out over a longer period of time might perhaps be considered isolated incidents, such that the burden they impose is *de minimis*."  *Brandon*, 938 F.3d at 36 n.11. Consistent with this observation, courts in this Circuit have found that a small number of incidents that violate a prisoner's free exercise of religion may not be sufficient to state a free exercise claim.  *See, e.g.*, *Osborn v. Harris*, No. 9:20-CV-673 (TJM/ATB), 2021 WL 1131413, at *9 (N.D.N.Y. Jan. 15, 2021) (finding plaintiff's allegations that he was provided meals too late on four occasions in one week during Ramadan were not sufficient to state a plausible free exercise claim because "four different [unnamed] individuals brought [plaintiff] his breakfast late on four separate occasions in one week" and "Plaintiff does not claim that he had problems

with the lateness of his breakfast for the rest of month of Ramadan or that any of the defendants repeated the alleged violation more than once"), *report and recommendation adopted*, 2021 WL 1124575 (Mar. 24, 2021); *Washington v. Afify*, 968 F. Supp. 2d 532, 539 (W.D.N.Y. 2013) (finding plaintiff's allegations that he was denied two religious breakfast meals and one evening meal were not sufficient to state a plausible free exercise claim because such a "brief deprivation" was not "significant enough to more than minimally burden [plaintiff's] religious practice"); *Butler v. Hogue*, No. 9:08-CV-264 (GLS/DRH), 2010 WL 4025893, at *4 (N.D.N.Y. Feb. 4, 2010) (dismissing free exercise claim based on allegations that plaintiff missed two of six meals in a two-day period, finding that "[s]uch isolated events in the context of regular daily meals constitute a *de minimis* interference with [plaintiff's] First Amendment rights").

Given that in the Second Circuit "even a single violation" of a plaintiff's religious meal or fasting requirements may constitute a "substantial burden," *Brandon*, 938 F.3d at 35, the Court cannot find at the motion-to-dismiss stage that Wiley's free exercise of his religion was not substantially burdened by Defendants' alleged failure to deliver seven meals to him in a manner that would permit him to comply with the dietary requirements of Ramadan. *See Skates*, 2016 WL 3882530, at *4 ("In light of the Second Circuit's recent decision in *Williams*, . . . in which the court criticized this [district] court's determination that the plaintiff's allegation that he was denied, at most, five religious meals over the course of one month was a *de minimis* burden on plaintiff's rights, it appears that the Second Circuit may now equate a district court's finding of a *de minimis* burden with a[n improper] finding that a plaintiff's beliefs are insincere.").

Therefore, the argument that Wiley has failed to adequately allege a substantial burden on his religious beliefs caused by Defendants' actions does not provide a basis to dismiss the Amended Complaint.

**IV.    Alternative Grounds for Dismissal**

Although I do not recommend dismissal of the Amended Complaint based on Defendants' claim that Wiley has inadequately alleged a substantial burden under the First Amendment and RLUIPA, I nevertheless recommend dismissal on alternative grounds. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990) (finding that courts may consider issues "antecedent to . . . and ultimately dispositive of" the dispute before them, even if the parties have not identified and briefed those issues).

**A.    The Amended Complaint should be dismissed against former interim DOC Commissioner Baker in both his official and individual capacities.**

Former interim DOC Commissioner Baker moves to dismiss Wiley's claims against him based on the same pleading deficiencies asserted by CoreCivic. (*See* Docs. 21, 23.) The Amended Complaint does not specify whether Wiley is suing Baker in his official or individual capacity. For the reasons discussed below, I recommend dismissal of the Amended Complaint as to Baker.

**1.    The Eleventh Amendment bars Wiley's claim for damages against Baker in his official capacity.**

Wiley's § 1983 claim for monetary damages against Baker in his official capacity is barred by the Eleventh Amendment and sovereign immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."

*Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[A] federal court [may] not entertain a suit brought by a citizen against his own State."). Therefore, although § 1983 generally provides a federal forum to remedy deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted). Thus, where a state official is sued for damages in his or her official capacity, the suit is deemed a suit against the state and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Exceptions to this general rule apply when there has been an explicit and "unequivocal[]" waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress. *See Pennhurst*, 465 U.S. at 99 ("Our reluctance to infer that a [s]tate's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system."); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity. To the contrary, the Vermont Legislature has specifically preserved the State's immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh

Amendment immunity for all claims not specifically waived).  It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).

Wiley's Amended Complaint seeks only money damages.  (Doc. 16 at 4.)  He does not request prospective injunctive relief.  (*See id.*)  Accordingly, the Eleventh Amendment bars Wiley's claim for damages against Baker in his official capacity and should be dismissed.[9]

> **2.    Wiley's claim against Baker in his individual capacity should be dismissed because the Amended Complaint does not allege the personal involvement of Baker in the alleged constitutional and statutory infringements.**

To the extent that Wiley sues Baker in his individual capacity, the Amended Complaint is insufficient because it does not allege Baker's personal involvement in the claimed constitutional and statutory deprivations.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  A defendant may therefore only be held accountable for his own actions under § 1983, *see Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic"), and the plaintiff must show some "tangible connection" between the constitutional violation alleged and that particular defendant, *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  The Amended Complaint alleges no facts indicating that Baker was personally

---

[9]  To the extent Wiley intended to include the DOC as a party to this suit, the Eleventh Amendment bars such a claim.  *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity).  A state agency also may not be sued under § 1983 because it is not a "person" within the meaning of the statute.  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983" (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))); *Holley v. Middletown Police Dep't*, Case No. 20-CV-1664, 2021 WL 2413398, at *4 (D. Conn. June 14, 2021) ("The DOC, as an arm of the state, is not a 'person' for purposes of section 1983 and therefore cannot be held liable as a defendant in an action raised under section 1983.").

involved or participated in the delivery of the untimely meals or in the failure to provide meals during Ramadan.  In fact, Baker's name only appears in the caption of the Amended Complaint; his name does not appear in the body of the Amended Complaint at all.  (*See* Doc. 16.)

To the extent that the Amended Complaint might be alleging that Baker is liable to Wiley under a theory of supervisory liability, i.e., pursuant to Baker's role as interim DOC Commissioner,[10] the claim also fails.  The allegations against Baker must show some level of personal involvement, given that supervisory liability in a § 1983 action cannot rest merely on a theory of respondeat superior.  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) ("[A] conception of supervisory liability—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents." (internal quotation marks omitted)).  In the Second Circuit, mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of the Department of Corrections in a § 1983 claim.  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

A supervisor may be held liable for unconstitutional conduct only in certain limited circumstances.  Specifically, to establish responsibility on the part of a supervisory official for a civil rights violation,  a plaintiff must demonstrate that the official: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or

---

[10]  Wiley's naming of Baker in the caption of the Amended Complaint as the "VT DOC Commissioner" (Doc. 16 at 1) suggests that Wiley believes Baker is at fault by virtue of his former role as interim Commissioner of the DOC.

appeal; (3) created or allowed to continue a policy or custom amounting to a constitutional violation; (4) was grossly negligent in supervising subordinates who committed a constitutional violation; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873. As the Second Circuit recently explained:

> [A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly.

*Tangreti*, 983 F.3d at 618 (second alteration in original) (citations and internal quotation marks omitted); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

The Amended Complaint does not allege that Baker had any personal involvement in or awareness of the alleged improper service of meals to Wiley during Ramadan. Specifically, the Amended Complaint does not allege that Baker was personally aware of Wiley's complaints about these meals; that he reviewed, responded to, or acted on the complaints; that he negligently supervised subordinates in the handling of either the complaints or the meals; or that he in any way disregarded a risk to Wiley's health, safety, or free exercise of religion with respect to service of the meals. Therefore, I recommend that Wiley's claim against Baker in his individual capacity be dismissed.

**B.    Assuming that CoreCivic is a state actor for § 1983 purposes, the Amended Complaint fails to allege that a CoreCivic policy or custom caused the alleged infringements to Wiley's exercise of his religion.**

Defendant CoreCivic also moves to dismiss Wiley's Amended Complaint. (*See* Doc. 21.)

Fundamentally, "[i]n order to establish individual liability under § 1983," the claimant must first show "that the defendant is a 'person' acting 'under the color of state law.'" *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004); *see Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 495 (E.D.N.Y. 2014) ("Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights . . . ."). In some circumstances, a private actor may qualify as a person "acting under color of state law" in causing a constitutional deprivation. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982).

Wiley has not identified any specific CoreCivic individuals that he alleges are responsible for the deprivation of his constitutional rights. Consequently, his Amended Complaint survives a motion to dismiss only if it attributes the alleged constitutional violations to CoreCivic as a person acting under color of state law. This Court has previously noted that a prison contractor is arguably more than a mere private corporation, as it provides services to prisoners on behalf of the State of Vermont. *See Chinnici v. Centurion of Vt., LLC*, Civil Action No. 2:16-cv-264-wks-jmc, 2018 WL 6002116, at *9 (D. Vt. Oct. 10, 2018); *see also Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (explaining that a private company like CoreCivic, which has contracted to manage correctional facilities on behalf of the State, "performs the traditional state function of operating a prison [and thus] acts under the color of state law for purposes of § 1983" (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996))); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided . . . ."); *West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that physician employed by

State of North Carolina to provide medical services to state prison inmates "acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury"). Other courts have found that CoreCivic may be deemed an entity acting under color of state law. *See, e.g.*, *Shannon v. Risper*, No. 3:20-cv-00518, 2020 WL 5407729, at *2 (M.D. Tenn. Sept. 8, 2020) ("[I]nasmuch as CoreCivic performs the traditional state function of operating a prison[, it] . . . is . . . a state actor for purposes of Section 1983 . . . .").

Even assuming that CoreCivic is a state actor, however, an employer generally is not liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees . . . ."); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *see also Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 n.2 (7th Cir. 2014) (collecting cases extending the *Monell* standard to private companies). In the ordinary case, therefore, private employers are not liable for the constitutional torts of their employees, "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas*, 924 F.2d at 408 (omission in original) (quoting *Monell*, 436 U.S. at 691); *see Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *2 (D. Vt. Feb. 5, 2007).

The Amended Complaint does not allege that an official policy or custom of CoreCivic caused the alleged failures to serve meals to Wiley in accordance with his religious beliefs. Accordingly, Wiley's claim against CoreCivic should be dismissed.

## V.    RLUIPA does not authorize monetary damages.

Wiley's claims against Baker and CoreCivic for violations of RLUIPA should be dismissed because RLUIPA "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland*, 758 F.3d at 224; *see Washington v. McKoy*, 816 F. App'x 570, 573 (2d Cir. 2020) ("[M]oney damages are not available under the RLUIPA."); *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("Every circuit to consider the question . . . has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities."). Wiley does not seek injunctive or declaratory relief in his Amended Complaint; he seeks only monetary damages. (*See* Doc. 16 at 4.) Therefore, his claims against Baker and CoreCivic for violations of RLUIPA should be dismissed.

## VI.    Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). An opportunity to amend is not required, however, where the plaintiff has already amended the complaint. *Id.*; *see also Advanced Marine Techs., Inc. v. Burnham Secs., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once). Nor is leave to amend required where "[t]he problem with [the complaint] is substantive," such that "better pleading will not

24

cure it." *Cuoco*, 222 F.3d at 112.  Wiley has already amended his complaint once.  (*See* Docs. 6, 16.)  e has not requested an opportunity to amend his complaint for a second time, nor has he stated facts that may cure the Amended Complaint's defects.  In fact, Wiley has not responded to Defendants' Motion to Dismiss the Amended Complaint.  I therefore recommend denying leave to amend.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Docs. 21, 23) be GRANTED, and Wiley's Amended Complaint (Doc. 16) be DISMISSED.

Dated at Burlington, in the District of Vermont, this 10th day of June 2022.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).